UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| GARY D. BENSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 4:08-CV-4 |
| v. | ) | |
| | ) | *Mattice / Lee* |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This action was instituted by the Plaintiff pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying the Plaintiff a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's motion for summary judgment and/or judgment on the pleadings [Doc. 13] and Defendant's motion for summary judgment [Doc. 15].

For the reasons stated herein, it is **RECOMMENDED** that: (1) Plaintiff's motion for summary judgment and/or judgment on the pleadings [Doc. 13] be **GRANTED**; (2) Defendant's motion for summary judgment [Doc. 15] be **DENIED**; (3) the decision of Commissioner be **REVERSED**; and (4) this action be **REMANDED** to the Commissioner for further administrative consideration pursuant to sentence four of 42 U.S.C. § 405(g) consistent with this report and recommendation.

## Administrative Proceedings

Plaintiff applied for DIB and SSI in January 2004, claiming disability beginning on April 1, 2002, due to post traumatic stress disorder ("PTSD") and hearing problems (Tr. 52-54, 56, 431-43). After Plaintiff's applications were denied initially and on reconsideration and following a hearing, the administrative law judge ("ALJ") issued an unfavorable decision finding Plaintiff was not disabled because he could perform his past relevant job as an assembly worker as well as a significant number of job identified by the vocational expert ("VE") (Tr. 11-23). The decision of the ALJ became the final decision of the Commissioner on November 8, 2007, when the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 6-8).

## Standard of Review

The Court must determine whether the ALJ failed to apply the correct legal standard and whether the ALJ's findings of fact were unsupported by substantial evidence. 42 U.S.C. § 405(g); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence

standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The Court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The Court of Appeals for the Sixth Circuit ("Sixth Circuit") has held that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner*, 745 F.2d at 388 (citation omitted).

### How Disability Benefits Are Determined

The Sixth Circuit recently reiterated the five-step procedure used by the Social Security Administration ("SSA") to determine eligibility for disability benefits as follows:

> The [Social Security] Act entitles to benefits payments certain claimants who, by virtue of a medically determinable physical or mental impairment of at least a year's expected duration, cannot engage in "substantial gainful activity." 42 U.S.C. § 423(d)(1)(A). Such claimants qualify as "disabled." *Id.* A claimant qualifies as disabled if he cannot, in light of his age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). To identify claimants who satisfy this definition of disability, the SSA uses a five-step "sequential evaluation process." 20 C.F.R § 404.1520(a)(4). The five steps are as follows:
>
> In step one, the SSA identifies claimants who "are doing substantial gainful activity" and concludes that these claimants are not disabled. *Id.* § 404.1520(a)(4)(i). If claimants get past this step, the SSA at step two considers the "medical severity" of claimants' impairments, particularly whether such impairments have lasted or will last for at least twelve months. *Id.* § 404.1520(a)(4)(ii). Claimants with impairments of insufficient duration are not disabled. *See id.* Those with impairments that have lasted or will last at least twelve months

proceed to step three.

At step three, the SSA examines the severity of claimants'
impairments but with a view not solely to their duration but also to
the degree of affliction imposed. *Id.* § 404.1520(a)(4)(iii). Claimants
are conclusively presumed to be disabled if they suffer from an
infirmity that appears on the SSA's special list of impairments, or that
is at least equal in severity to those listed. *Id.* § 404.1520(a)(4)(iii),
(d). The list identifies and defines impairments that are of sufficient
severity as to prevent any gainful activity. *See Sullivan v. Zebley,* 493
U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). A person with
such an impairment or an equivalent, consequently, necessarily
satisfies the statutory definition of disability. For such claimants, the
process ends at step three. Claimants with lesser impairments proceed
to step four.

In the fourth step, the SSA evaluates claimants' "residual functional
capacity," defined as "the most [the claimant] can still do despite
[her] limitations." 20 C.F.R. § 404.1545(a)(1). Claimants whose
residual functional capacity permits them to perform their "past
relevant work" are not disabled. *Id.* § 404.1520(a)(4)(iv), (f). "Past
relevant work" is defined as work claimants have done within the past
fifteen years that is "substantial gainful activity" and that lasted long
enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1).
Claimants who can still do their past relevant work are not disabled.
Those who cannot do their past relevant work proceed to the fifth
step, in which the SSA determines whether claimants, in light of their
residual functional capacity, age, education, and work experience, can
perform "substantial gainful activity" other than their past relevant
work. *See id.* § 404.1520(a)(4)(v), (g)(1). Claimants who can perform
such work are not disabled. *See id.;* § 404.1560(c)(1). The SSA bears
the burden of proof at step five. *See Jones v. Comm'r of Soc. Sec.,* 336
F.3d 469, 474 (6th Cir.2003).

*Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006).

### ALJ's Findings

The ALJ made the following findings in support of Commissioner's decision, which are

conclusive if they are supported by substantial evidence in the record:

1.     The claimant meets the insured status requirements of the Social
       Security Act through March 31, 2008.

4

2. The claimant has not engaged in substantial gainful activity since April 1, 2002, the alleged onset date . . . .

3. The claimant has the following severe combination of impairments: headaches, degenerative disc disease in the cervical spine, a generalized seizure disorder, bilateral hearing loss, and anxiety . . . .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . .

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform unskilled, simple, repetitive and routine light work activity in a low stress environment with no loud noises. Due to the possibility of seizure activity, the claimant would additionally be restricted to jobs that do not involve operating a motor vehicle, unprotected heights, hazardous moving machinery, or climbing of ladders, ropes or scaffolds.

6. The claimant is able to perform past relevant work as an assembly line worker . . . .

7. The claimant was . . . 37 years old on the alleged disability onset date, which is defined as a younger individual . . . .

8. The claimant has a limited education and is able to communicate in English . . . .

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled . . . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform in addition to his past relevant work as an assembly line worker . . . .

11. The claimant has not been under a "disability," as defined in the Social Security Act, from April 1, 2002 through the date of this decision . . . .

(Tr. 16-17, 19, 21-22).

## Issues

The issues presented by Plaintiff are:

1.  Whether the ALJ appropriately evaluated the medical evidence and gave the opinion of Plaintiff's treating psychiatrist, Dr. Craig, the appropriate weight.

2.  Whether the decision of the ALJ is supported by substantial evidence.

[Doc. 13-2 at 5, 13 ].

## Review of Evidence

***Plaintiff's Age, Education, and Past Work Experience***

Plaintiff was 42 years of age on the date of the ALJ's decision (Tr. 52, 40). He completed the eleventh grade and attended special education classes and has past relevant work experience as a cigarette stamper, dishwasher and laborer (Tr. 57, 60, 71-75, 84, 460-61).

***Medical Evidence***

Only the most relevant medical evidence will be briefly summarized herein. Whether or not the medical evidence is summarized herein, all of the relevant medical evidence has been reviewed and considered in reaching the recommendation set forth in this report and recommendation.

Victor O'Bryan, Ph. D. completed a psychiatric review technique form ("PRTF") (Tr. 151-64) and an assessment of Plaintiff's mental residual functional capacity ("RFC") (Tr. 165-68) for the state agency on April 6, 2004. In the PRTF, Dr. O'Bryan indicated Plaintiff suffered from an anxiety related disorder as defined in § 12.06 of the listings (Tr. 151, 156). Dr. O'Bryan opined Plaintiff had a mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in concentration, persistence or pace; and had no episodes of decompensation of extended duration (Tr. 161). In his mental RFC assessment, Dr. O'Bryan indicated Plaintiff was moderately limited in his ability: to understand and remember detailed instructions; to maintain

6

attention and concentration for extended periods; to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to respond appropriately to changes in the work setting (Tr. 165-66). Dr. O'Bryan indicated all other aspects of Plaintiff's mental RFC were not significantly limited (*id.*).

Tania Williams, M.A., a licensed audiologist, performed audiometric testing of Plaintiff's hearing on May 13, 2004 (Tr. 169-70). Ms. Williams stated the testing revealed a moderately severe to severe binaural conductive hearing loss (Tr. 170). Ms. Williams also indicated that due to numerous ear surgeries, Plaintiff would need to obtain medical clearance before being fitted for a hearing aid and should pursue a trial period if he wanted to obtain a hearing aid (*id.*).

John Fields, M.D. completed an assessment of Plaintiff's physical RFC for the state agency on June 7, 2004 (Tr. 171-76). Dr. Fields indicated Plaintiff had no exertional, postural, manipulative, or visual limitations (Tr. 172-73). He indicated Plaintiff's ability to hear was limited, but his ability to speak was not (Tr. 174). He also indicated Plaintiff should avoid concentrated exposure to noise, but otherwise had no environmental limitations in his physical ability to engage in work related activity (*id.*).

Numerous progress notes from Plaintiff's treating psychiatrist, Dr. Allen Craig, M.D., appear in the record (Tr. 238-44, 253-54, 255-59, 264-68, 277-82, 287-91, 292-96, 297-301, 303-07, 309-11, 312, 316, 317-20, 323-25, 328-30, 369-86, 401-05, 413-21, 426-30). Dr. Craig completed a medical source statement concerning the nature and severity of Plaintiff's mental impairment on

August 3, 2004 (Tr. 245-48, 364-67). Dr. Craig indicated Plaintiff's abilities: to remember locations and work-like procedures; to understand and remember very short and simple instructions; to carry out short and simple instructions; to sustain an ordinary routine without special supervision; and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and to set realistic goals or to make plans independently of others were mildly limited (Tr. 245-47). Dr. Craig also indicated Plaintiff's abilities: to understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to make simple work-related decisions; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to ask simple questions and request assistance; to get long with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; to be aware of normal hazards and take appropriate precautions; and to travel in unfamiliar places or to use public transportation were moderately limited (*id.*). Dr. Craig further indicated that Plaintiff's abilities: to work in coordination with or proximity to others without being unduly distracted by them; to accept instructions and to respond appropriately to criticism from supervisors; and to respond appropriately to changes in the work setting were subject to a moderately severe impairment (Tr. 246-47). In addition, Dr. Craig also indicated Plaintiff did not have a substantial loss in his abilities: to understand, remember, and carry out simple instructions; to make judgments that were commensurate with the functions of unskilled work, *i.e.*, simple work-related decisions; and to deal with changes in routine work situations (Tr. 247). Dr. Craig indicated, however, that Plaintiff did have a substantial loss in his ability to appropriately respond to supervision, co-workers and unusual work-situations (*id.*). Dr. Craig also

8

indicated that Plaintiff's limitations had lasted for 12-continuous months and the onset of his limitations was on July 8, 1997 (Tr. 248). Finally, Dr. Craig commented that he was unable to discern whether the limitations he had set forth in his medical source statement were due to Plaintiff's PTSD or his significant hearing loss (Tr. 248).

### *Hearing Testimony*

#### A. *Plaintiff*

Plaintiff testified, as relevant, as follows: He completed the eleventh grade, in special education classes (Tr. 460). He worked as a dishwasher at a restaurant, put tax stamps on cigarette packages and packaged cigarettes, and was a parts worker on an assembly line (Tr. 461-62). Plaintiff has been diagnosed with PTSD and has flashbacks of the event that precipitated his PTSD about twice a week (Tr. 463-64). Plaintiff also has severe headaches about four or five times per month (Tr. 465-66). Plaintiff has a sleeping disorder and sleeps five or six hours per night (Tr. 466). Plaintiff has trouble concentrating (*id.*). Plaintiff has had seizures (Tr. 467). Plaintiff has a hearing problem and has had about ten surgeries for his hearing problem (Tr. 468). He does not wear or use hearing aids because he was told hearing aids would not work (*id.*). Plaintiff watches TV, but has to turn the volume up to a very loud level due to his hearing problem (Tr. 466). Plaintiff also has neck and back pain, particularly since a car wreck in 2002 (Tr. 469). Plaintiff does not drive and has not driven in three years because of the possibility he might have a seizure (Tr. 470). Plaintiff takes various medications for the conditions referenced above.

#### B. *Plaintiff's Wife*

Plaintiff's wife, Carmen Benson, testified as follows: She and Plaintiff have been married for 18 years (Tr. 471). She confirmed Plaintiff's headaches affect him, occur four to five times per month and last an entire day (Tr. 471-72). She also saw Plaintiff when he had his one major seizure

9

(Tr. 472). Plaintiff has not had another major seizure because he has been taking his medicine (Tr. 472).

### C.   VE Testimony

Ben Johnston, the VE at the hearing testified as follows:  In response to a hypothetical involving a semi-younger man with an eleventh-grade special education, past work experience similar to the Plaintiff, with the RFC for light work, limited to performing simple, routine, and repetitive work in a low stress work environments, with no exposure to loud noises, no working at unprotected heights or on scaffolding and no operation of motor vehicles, the VE stated such individual could perform all of Plaintiff's past relevant work, except the dishwashing job which was medium work (Tr. 475).  In response to the ALJ's request that the VE identify additional jobs that could be performed by the aforementioned hypothetical individual, the VE identified jobs as an inspector of small objects and a packer of small objects in boxes or bags, with 250 jobs in the regional economy and 100,000 nationally (*id.*).

In response to a second hypothetical which involved the identical limitations set forth above except that the hypothetical individual was limited to sedentary work rather than light work, the VE stated such individual could not perform any of Plaintiff's past relevant work, but could perform inspecting jobs, assembly jobs and packing jobs at the sedentary level with 200 jobs regionally for each of the three categories of jobs and 50,000 jobs nationally (Tr. 475-76).

In response to a hypothetical individual with Plaintiff's age, education and work background, subject to the limitations set forth by Dr. Craig in his mental RFC assessment of Plaintiff, the VE stated such limitations would preclude the hypothetical individual from engaging in substantial gainful activity on a regular basis (Tr. 476-77).

The VE further stated that if Plaintiff's testimony that he had headaches which affected him up to four or five days per month were fully credited, such testimony would preclude Plaintiff from working on a regular basis (Tr. 477). The VE also stated that the global assessment of functioning ("GAF") score of 65 which Dr. Craig consistently assigned to Plaintiff in his medical reports was not consistent with the limitations set forth in Dr. Craig's mental RFC assessment, because the mental symptoms experienced by an individual with a GAF of 65 would not impede their performance of work or work related activities to a significant degree (Tr. 478). The VE also stated that some of the areas of Plaintiff's functioning, which is assumed within the GAF score of 65 assigned by Dr. Craig, could potentially be affected by his hearing loss (Tr. 480).

## Analysis

### A.    The Parties' Positions

Plaintiff asserts the main issue in this action concerns the weight accorded by the ALJ to the assessment set forth in the medical source statement completed by Dr. Craig, the Plaintiff's treating psychiatrist [Doc. 13-2 at 2-3]. Plaintiff asserts that the "ALJ . . . did not give Dr. Allen Craig's opinion the appropriate weight to which it is entitled. If he had done so, the substantial evidence would only have supported a finding of disability in this matter." [*Id.* at 3].

The Commissioner responds, in summary, that substantial evidence supports the ALJ's decision overall and supports the ALJ's determination to give Dr. Craig's opinion little weight [Doc. 16].

### B.    The ALJ's Findings

As relevant to the issues presented, the ALJ explained his findings as follows:

> The medical evidence of record reveals that the claimant sought mental health treatment with Centerstone Mental Health Center beginning in 2001 due to an increased anxiety level due to job loss

and his wife's poor health. Treatment notes, in February 2002 reveal improvement in the claimant's mental status. The mental health counselor, Ms Kathyrne Shapard, assessed the claimant with only a mild limitation in the primary areas of daily functioning. She rated the claimant's Global Assessment of Functioning (GAF) at 65. The Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, described a GAF of 65 as only a mild impairment in mental functioning.

The claimant was evaluated by Dr. Alan [sic] Craig, a staff psychiatrist initially in August 2002, at which time Dr. Craig noted the claimant was "doing well with current medications. In March 2003, the claimant had no impairments in activities of daily living and he was performing "odd" jobs. He exhibited no vegetative disturbances, his thought processes were normal, and motivation, insight and judgment were good. Dr. Craig stated that the claimant could return for treatment with Ms. Shapard, his counselor only as needed.

In January 2004, the claimant reported some hypervigilence due to a post-traumatic stress episode. . . . However, upon assessment, no diagnosis or condition was provided. There was no change in the claimant's medicinal therapy. Mental status examination remained unchanged from previous evaluations. In April 2004, the claimant reported he was "doing great." The claimant's GAF was rated at 65 in June 2004. There was additional documentation of work activity in August 2004 with no change in mental status. Dr. Craig noted in an assessment that it was questionable as to whether the claimant's mental limitations were related to a post traumatic stress syndrome or to his bilateral hearing loss.
. . .
In January 2005, the claimant reported an additional seizure requiring an increase in his anti-seizure medication; however, treatment notes . . . do not reflect any change in the claimant's medication or any reports of additional seizure activity. . . . In April 2006, the claimant's GAF remained at 65.
. . .
Regarding the claimant's alleged mental impairments, I find that he has only mild limitations in activities of daily living, but may experience mild to moderate limitations in social interaction on a sporadic basis due to his hearing loss. Giving him the benefit of the doubt, I also find that he has mild to moderate limitations in maintaining concentration, persistence or pace in performing detailed or complex job tasks. However, the record does not show he would

experience a significant limitation if restricted to simple or unskilled functions. Even if the claimant experienced sporadic problems with interaction with others, Social Security Ruling 85-15 states that unskilled jobs, "ordinarily involve dealing primarily with objects, rather than data or people."

. . .

Regarding the claimant's allegations of a mental impairment, mental health treating sources have failed to confirm a diagnosis of post traumatic stress disorder. Dr. Craig, the staff psychiatrist, reported that it was unclear as to whether the claimant's mental functioning limitations were due to a post-traumatic stress disorder or due to his bilateral hearing loss. The Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, describes the criteria for a diagnosis of post-traumatic stress disorder as "persistently reexperiencing distressing dreams of the event with disassociative flashback episodes and intense psychological distress when exposed to internal or external cues that symbolize the traumatic event. These experience result in intense fear, helplessness or horror." Although treatment notes reveal complaints on a few occasions of post-traumatic stress, there simply is no documentation of severe or frequent episodes of hypervigilence or any other severe distress symptoms to support a diagnosis of this kind. Even the claimant's reports of persistent anxiety are found less credible secondary to the claimant's self reports of work activity throughout the period at issue when seen by his treating physicians.

. . .

Dr. Craig, the staff psychiatrist at Centerstone, completed a mental assessment form in August 2004, at which time he checked blocks noting moderately severe limitations in the claimant's ability to work in coordination with others, accept instructions from supervisors, or respond appropriately to changes in the work setting. Yet, Dr. Craig checked only mild limitations in the claimant's ability to maintain socially appropriate behavior, sustain an ordinary routine without special supervision, or understand and remember short simple instructions. He additionally noted moderate limitations in the claimant's ability to complete a normal workday, interact with the public, or be aware of normal hazards and take appropriate precautions. Finally, the [sic] reported that the claimant has no substantial loss of ability to understand, remember and carry out simple instructions or in his ability to make judgments in an unskilled work atmosphere. He contradicted himself by stating the claimant has no substantial loss of ability to deal with changes in a routine work setting. Clearly, this assessment is contradictory within itself. Treatment notes also do not support the severity of some of these

13

limitations. The claimant's GAF rating remained at 65 throughout the period at issue for purposes of this decision, which is only a mild limitation in mental functioning. Disability claims cannot be decided on a treating physician's opinion where there is no reasonable basis for the opinion (Social Security Ruling 96-2p). Therefore, I afford this opinion little weight.

The state agency psychological consultant found that although the claimant has a severe mental impairment, he still retains the ability to perform most work. The evidence of record supports this conclusion. Therefore, I afford it great weight.

Accordingly, I find the claimant retains the residual functional capacity to perform unskilled simple repetitive and routine light work activity in a low stress environment with no loud noises. Due to the possibility of seizure activity, he would additionally be restricted to no operation of a motor vehicle, and no unprotected heights, hazardous machinery, or climbing of ropes, ladders or scaffold.

(Tr. 18-21) (internal citations omitted).

### C.   *Standard*

Applicable regulations state the Commissioner will evaluate every medical opinion and will consider the following factors in deciding what weight to give each opinion: examining relationship; treatment relationship; supportability; consistency; specialization; and other factors. 20 C.F.R. §§ 404.1527(d), 416.927(d). Although a treating physician's opinion typically is entitled to substantial deference, as argued by Plaintiff, the ALJ is not bound by that opinion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). The Sixth Circuit has consistently stated the treating source's opinion is entitled to deference only if it is based on objective medical findings, *see, e.g., Warner*, 375 F.3d at 390; *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993), *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985), and not contradicted by substantial evidence to the contrary. *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987).

If the treating source's opinion is not given controlling weight, its weight is determined by the same factors that are considered in evaluating every medical opinion. It is well-settled law in the Sixth Circuit that if an ALJ does not accord controlling weight to the opinion of a claimant's treating source, the ALJ must apply certain factors in determining what weight to give the opinion. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004). Pursuant to the regulations, the ALJ:

> is to consider (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, and (5) the specialization of the treating source.

*Id.* (quoting 20 C.F.R. § 404.1527(d)).

The ALJ must weigh the opinions of the acceptable medical sources, including the opinions of the treating physicians and the state agency medical sources, as required by applicable regulations, and resolve inconsistencies between the acceptable sources. *See* 20 C.F.R. §§ 404.1527(d)(4), (f)(2)(i) and 416.927(d)(4), (f)(2)(i); *Mullins v. Sec'y of Health & Human Servs.*, 836 F.2d 980, 984 (6th Cir. 1987) ("Claimant's argument rests solely on the weight to be given opposing medical opinions, which is clearly not a basis for our setting aside the ALJ's factual findings."). With respect to weighing the opinions, the Sixth Circuit has held the opinion of a treating physician generally is entitled to greater weight than the contrary opinion of a consulting physician who has examined the claimant on only a single occasion. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997); *Hardaway*, 823 F.2d at 927. An ALJ may, however, discount a treating physician's opinion based on an opinion of an examining or a reviewing physician in appropriate circumstances. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *Moon v. Sullivan*,

923 F.2d 1175, 1183 (6th Cir. 1990). The responsibility for weighing the record evidence, including conflicting physicians' opinions, and resolving the conflicts rests with the ALJ. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

In addition, the ALJ must give good reasons for the weight given a treating source's opinion. *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 461 (6th Cir. 2005); 20 C.F.R. § 404.1527(d)(2)). This reason-giving requirement is "clearly procedural ensuring 'that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (quoting *Wilson*, 378 F.3d at 544). The reason-giving requirement in § 404.1527(d)(2) "exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Id.* In the Sixth Circuit:

> [b]ecause of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions, denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).

### D.    Treating Physician

Dr. Craig had been Plaintiff's treating psychiatrist for some five years at the time he rendered the opinion at issue herein. The ALJ gave little weight to Dr. Craig's opinion regarding the diagnosis of PTSD or Dr. Craig's limitations on Plaintiff finding that the limitations were unsupported by Dr. Craig's own treatment notes and inconsistent with the repeated assignment of

16

a GAF score of 65.[1] The ALJ also noted Dr. Craig's assessment contained what the ALJ characterized as internal inconsistencies. In addition, the ALJ noted that Dr. Craig commented in his medical source statement that he was unable to determine whether the limitations he had opined were caused by PTSD or whether they resulted from hearing loss.

Plaintiff contends, among other things, that the ALJ erred in commenting that Dr. Craig did not definitively diagnose Plaintiff with PTSD, asserting that Dr. Craig's treatment notes repeatedly reference that diagnosis [Doc. 13-2 at 6-7]. The Commissioner argues this error is not a sufficient basis for reversal of the decision of the Commissioner because the question before the ALJ was not whether Dr. Craig confirmed a diagnosis of PTSD, but instead was the degree of functional limitations imposed by Plaintiff's condition.

The *Diagnostic and Statistical Manual of Mental Disorders*, Fourth edition, text revision ("DSM-IV-TR"), states that the diagnosis of 309.81 is a diagnosis of Postraumatic Stress Disorder. *See DSM-IV-TR* at 463-68. The record contains two progress notes signed by Dr. Craig which explicitly diagnose "PTSD, chronic" (Tr. 312, 316) and repeated references to an Axis I diagnosis of 309.81 (*see e.g.*, Tr. 242, 250). Thus, the ALJ's statement that the Plaintiff's "mental health treating sources have failed to confirm a diagnosis of post traumatic stress disorder" (Tr. 20), is inaccurate.

It is true that the functional limitations imposed by a condition, not just a diagnosis of the condition, determines disability. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam)

---

[1] The DSM-IV-TR states a GAF score of 65 indicates: "Some mild symptoms (e.g., depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning** (e.g., occasional truancy, or theft within the household), **but generally functioning pretty well, has some meaningful interpersonal relationships.**"

("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition.");
*Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir.), *cert. denied*, 389 U.S. 1060 (1967) (the fact that a person suffers from a diagnosed disease or ailment is insufficient absent proof the condition is severe enough to be disabling, to warrant an award of benefits). However, while the ALJ explained his reasons for discounting Dr. Craig's assessment of the functional limitations imposed on Plaintiff's mental RFC, all of his reasons are not supported by the record. The Sixth Circuit has indicated an ALJ complies with the good reason requirement only if he provides an accurate and thorough discussion of the treating physician's reports and findings. *See Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 805 (6th Cir. Jan. 15, 2008). At least one of the ALJ's stated reasons for discounting Dr. Craig's opinion – that Dr. Craig failed to confirm a diagnosis of PTSD – does not appear to be accurate. It is simply unknown whether the ALJ might accord more weight to some or all of Dr. Craig's opinion based upon an accurate recitation of Dr. Craig's findings and reports. In addition, at least one circuit court has suggested that where an ALJ not only rejects the treating physician's opinion, but actually rejects the diagnosis of a treating physician and questions the existence of a plaintiff's diagnosed mental condition, the ALJ, at a minimum, is required to order a consultative psychiatric opinion concerning the diagnosed medical condition. *Delrosa v. Sullivan*, 922 F.2d 480, 485 (8th Cir. 1991). Here, the ALJ not only rejected the limitations opined by Dr. Craig, he also questioned Dr. Craig's diagnosis of PTSD as well. Under these circumstances, I conclude the ALJ's decision is not supported by substantial evidence.

I do not find the ALJ's failure is harmless in this case. The Sixth Circuit has identified circumstances where an ALJ's failure to give good reasons for rejecting the opinion of a treating source is a *de minimis* violation and constitutes harmless error which does not warrant remand and

reversal of the decision of the Commissioner. *See Hall*, 148 F. App'x at 462. The examples of circumstances which do not require reversal and remand when an ALJ fails to comply with the requirement to give good reasons for rejecting the opinion of a treating source identified by the Sixth Circuit are:

> (1) "if a treating source's opinion is *so patently deficient* that the Commissioner could not possibly credit it;" (2) "if the Commissioner *adopts the opinion of the treating source* or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of § 1527(d)(2)–*the provision of the procedural safeguard of reasons-even though she has not complied with the terms of the regulation.*"

*Id.* (quoting *Wilson*, 378 F.3d at 547) (emphasis in original). These circumstances do not apply here as Dr. Craig's assessment is not so patently deficient that the Commissioner could not possibly credit it[2], the ALJ did not adopt Dr. Craig's opinion or make findings consistent with it, and the goal of the reason giving requirement is not because Plaintiff would be unable to understand why the administrative bureaucracy deems him not disabled when Dr. Craig is telling him he has PTSD with the identified limitations. *See Smith*, 482 F.3d at 875; *Wilson*, 378 F.3d at 544.

Although the conclusion reached here is that the decision of the Commissioner is not

---

[2] The ALJ suggested the GAF score of 65 assigned by Dr. Craig to Plaintiff was inconsistent with the limitations opined by Dr. Craig. However, the Sixth Circuit has reviewed the impact of GAF scores noting the Commissioner had declined to endorse the GAF score for use in SSA programs and that GAF scores have no "direct correlation to the severity requirements of mental disorders listings." *DeBoard v. Comm'r of Soc. Sec.*, No. 05-6854, 211 F. App'x 411, 415 (6th Cir. 2006) (quoting *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (quoting 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000))). *See also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) (Sixth Circuit noted it was "not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place."); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (Sixth Circuit indicated low GAF scores are not necessarily determinative of impairment). Based on the precedent and administrative record, even a GAF score of 65, such as that assigned to Plaintiff, does not necessarily establish the absence of a limiting mental impairment due to PTSD.

19

supported by substantial evidence, a court may reverse an ALJ's decision and immediately award benefits only if "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1984) (quoting *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176. This standard is certainly not satisfied here.

Having reviewed the record in light of the Plaintiff's assertions of error, I **FIND** the decision of the Commissioner denying DIB and SSI benefits to Plaintiff is not supported by substantial evidence in the record. Accordingly, I **RECOMMEND** the decision of the Commissioner be reversed and this matter be remanded to the Commissioner for further administrative consideration pursuant to sentence four of 42 U.S.C. § 405(g) consistent with this report and recommendation. This conclusion in no way suggests the outcome that should be reached upon further review.

## Conclusion

Having carefully reviewed the administrative record and the briefs of the parties filed in support of their respective motions, for the reasons stated above it is **RECOMMENDED**[3]:

(1)     Plaintiff's motion for summary judgment/judgement on the pleadings [Doc. 13] be

**GRANTED**;

---

[3] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

(2)     Defendant's motion for summary judgment [Doc. 15] be **DENIED**;

(3)     Judgment be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure

        **REVERSING** the Commissioner's decision which denied benefits to the Plaintiff;

        and

(4)     This action be **REMANDED** to the Commissioner for further administrative

        consideration under sentence four of 42 U.S.C. § 405(g).


                        s/Susan K. Lee
                        SUSAN K. LEE
                        UNITED STATES MAGISTRATE JUDGE